## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

STEPHEN MICHAEL GAULTNEY,　　　)
　　　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　　CIVIL ACTION NO. 1:09-1221
　　　　　　　　　　　　　　　　)
DAVID BALLARD, Warden,　　　　　)
Mount Olive Correctional Complex,　)
　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　)

### PROPOSED FINDINGS AND RECOMMENDATION

On November 5, 2009, Petitioner, by counsel, Dana P. McDermott, filed a Petition Under

28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 1.)

Petitioner alleges the following grounds for *habeas* relief:

1.　　　Voluntariness of statement given to arresting detective due to drug intoxication and totality of circumstances.

　　　　Supporting facts: The Petitioner was arrested in the early morning of 9/16/02 after a shooting before which he took cocaine, synthetic morphine, and alcohol. Before the Petitioner gave a statement, he completed a Miranda form, waived counsel, but also marked a box indicating he was "high." There was a suppression hearing, but the statement was not considered. The State brought the statement into evidence at trial via testimony. When the Petitioner gave the statement, his pants were still wet because he had wet himself during the shooting.

2.　　　The Grand Jury proceeding was tainted by misconduct, thus invalidating the indictment coupled with denial of counsel.

　　　　Supporting facts: Before the Grand Jury, the arresting officer said the Petitioner wanted to kill police officers and there was transferred intent without any evidence. Prosecutors gave unsworn testimony and gave legal conclusions, e.g., by telling the grand jurors there was premeditation and deliberation.

　　　　The transcript of the Grand Jury proceeding was available one month before

the trial began. The defense counsel could have challenged the indictment at the beginning of the trial, but they did nothing.

3.   Mental incompetence at the time of crime and denial of counsel.

Supporting facts: The Petitioner was "high" at the time of a shooting. The Petitioner believed he saw intruders coming into his residence via second-floor windows and shot a friend instead. Everyone believed the Petitioner was hallucinating. The defense counsel failed to fully inform their own expert witnesses that a day or so before the shooting the Petitioner was seeing people who were not there. Later, one evaluator changed his testimony, but was impeached by the State.

4.   Knock and announce/self-defense instruction.

Supporting facts: In the Petitioner's statement to the arresting detective, he believed there had been a home invasion into his residence via second-floor windows. The individuals did not identify themselves or yell "police." The Petitioner felt threatened, scared, and even wet his pants. He fired shots. Much later the Petitioner speculated if the intruders were of a drug task force. The Petitioner had a right of self-defense, but the trial judge gave a transferred intent instruction.

5.   Transferred intent instruction, assurance by police there were no police; abuse of discretion, and the State failed to carry its burden on malice and premeditation.

Supporting facts: The trial judge gave an instruction of transferred for first-degree murder based on hallucinations of the Petitioner. The Petitioner thought there was a home invasion through the second-floor windows of his residence. A day or two earlier, he though the police might be watching him, but a Princeton police officer told the Petitioner there was no police activity whatsoever in the area.

6.   A courtroom environment which may have intimidated defense counsel and the Petitioner.

Supporting facts: The trial judge talked (with the jury out of the room) in wild terms, e.g., about mob rule in the Petitioner's residential area and no one wanting to go into Petitioner's residence and clean up after an IV drug user. When the Petitioner was considering testifying on his own behalf, the judge, inter alia, said "anybody who represents themselves has a fool for a client." The Petitioner did not testify.

7.     The stickers on the front door of the Petitioner's residence - Constitutional errors in evidentiary rulings - Instructions to the jury.

Supporting facts: The Petitioner had some stickers on the front door of his residence such as "welcome to the dog pound," and another which suggested that one might be shot at if they entered. There was a Suppression Hearing on September 26, 2003, just three days before the trial began. Some of the stickers were kept as evidence although no foundation had been laid as to when and by whom the stickers had been put there. The judge gave a "general threat" instruction.

8.     Trial judge's instruction on malice.

Supporting facts: The trial judge gave an instruction on malice which included a common phrase saying that malice could be formed "at any previous time" before the incident at issue. That phrase coupled with the "general threat" instruction could have shifted the burden of proof on malice to the defense.

9.     Lack of nexus or concurrence leading to a structural error or a variance between the evidence and the law an abuse of discretion.

Supporting facts: The "general threat" instruction *supra* lacked nexus or concurrence with the stickers *supra*. At the sentencing hearing held on November 17, 2003, the judge dwelt upon the "longtime antisocial behavior." Before the end of the trial, the judge, with the jury out of the courtroom, at least twice referred to "antisocial" while discussing jury instructions with the counsels for both parties.

10.    The shell casings, the ballistics report and denial of counsel.

Supporting facts: Sixty-one shell casings were found at the crime scene, yet never tested as to when they were fired. The defense never raised that issue. Three different brands of shell casings were found. One shell casing representative of each group was tested as to whether the casing was fired by the Petitioner's .357 magnum. One representative was inconclusive. The prosecution declined to place the report in evidence. The inconclusiveness could have been used to impeach the testimony of the three officers who said shots came near them, yet never saw flashes in the pre-dawn hours.

11.    Diminished capacity defense, violation of Fourth, Fifth, and Sixth Amendments, coerced confessions, a prejudicial trial environment, and denial of counsel.

3

Supporting facts:  The defense counsel pursued a diminished capacity defense by allowing into testimony essentially all of the contents of three psychiatric/psychological evaluations, one of which was for the State. The Petitioner did sign waivers, but decided that he did not want a diminished capacity defense, thus withdrawing his consent. The defense counsel continued and violated the Petitioner's Fourth (right to privacy), Fifth (right against self-incrimination), and Sixth (denial of counsel) Amendment rights. One could also say that the defense forced the Petitioner into an involuntary guilty plea. With the contents of these evaluations revealed to the court, a prejudicial environment ensued.

12.     End of the diminished capacity defense; trial went to closing arguments and to the jury without a defense for the Petitioner.

Supporting facts: On the third day of the trial (TT 40 - 42, 10/2/03), a defense counsel "opened the door" to premeditation and deliberation by asking such of his own expert witness. The prosecuting attorney, upon cross, took advantage (43 - 45) and got the expert to say the Petitioner could premeditate and deliberate, ruining a diminished capacity defense. The trial went to the final jury instructions and closing arguments without a defense for the Petitioner.

13.     The defense counsel abandoned their adversarial role (denial of counsel) and this abandonment gave rise to an unjust result.

Supporting facts: The defense counsel allowed into evidence, via psychiatrist/psychologists' testimony of their evaluations of the Petitioner, later speculation by the Petitioner that perhaps the intruders into his residence were police of some type. The prosecution warned the defense that course of action would be damaging to the Petitioner's case and strengthen the argument for transferred intent and first-degree murder. The defense counsel persisted in their course which even allowed the prosecuting attorneys to be commenting about the Petitioner having a deviant belief systems and being antisocial before the jury, even in the State's closing argument.

14.     Double Jeopardy and severer sentence than expected.

Supporting facts: The Petitioner was convicted of one count of first-degree murder with mercy and three counts of wanton endangerment. The sentences on the three counts of wanton endangerment were set to run concurrently with each other and consecutively to the first-degree murder with mercy sentence. The four counts arose from one transaction. The Petitioner fired shots at intruders, and the first shot of which killed a visiting friend. The sentences on the four counts should all run concurrently.

4

15.     An appeals counsel who did not want to do an appeal.

        Supporting facts: The appeals counsel failed to appeal that there was insufficient evidence for conviction on the three counts of wanton endangerment, and also failed to appeal the consecutive sentencing mentioned *ante*. Further, the appeals counsel simply was not doing the appeal, and after two and a half years had passed since the Petitioner had been sentenced, still had not requested all the transcripts of the underlying criminal proceeding.

16.     Denial of counsel at habeas corpus status hearing.

        Supporting facts: The Petitioner had put in a *pro se* habeas corpus petition with one issue: failure to file an appeal. The Petitioner wanted court-appointed counsel to represent him at the hearing. No such counsel was appointed and he was sent into a back room with his two appeals counsels and a former trial counsel who had no status at this hearing. This is a denial of counsel by the court itself.

17.     Trial court lack jurisdiction.

        Supporting facts: There were many instances of denial of counsel, ineffective assistance of counsel, violations of rights under the Fourth and Fifth Amendments, a possible Brady violation, and Denial of Due Process.

18.     Reversible cumulative error.

        Supporting facts: The erroneous "general threat" jury instruction; the "transferred intent" instruction; allowance into testimonial evidence of entire contents of psychiatric/psychological evaluations including potentially prejudicial material with no probative value without the Petitioner's consent; the defense's destruction of the diminished capacity defense; violations of the Petitioner's Fourth, Fifth, and Sixth Amendment rights.

(Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

## PROCEDURAL HISTORY

On October, 16, 2002, the Grand Jury of Mercer County, West Virginia, returned an

5

Indictment against Petitioner, charging him with one count of murder and three counts of wanton endangerment. State v. Gaultney, Criminal Action No. 02-F-267 (Cir. Ct. Mercer Co. Nov. 17, 2003). (Document No. 26-1, Exhibit 1, pp. 1 - 3.) Following a jury trial conducted on September 30, 2003 - October 3, 2003, Petitioner was convicted of all counts. (Id., Exhibit 2, pp. 4 - 6.) By Order entered November 13, 2003, Petitioner was sentenced to life with mercy as to his murder conviction (Count 1) and a determinate period of five years as to each count of wanton endangerment (Counts 2 - 4). (Id., Exhibit 3, pp. 7 - 10.) Petitioner's wanton endangerment sentences (Counts 2 - 4) were ordered to run concurrently with one another, but consecutively with his sentence for murder (Count 1). (Id.) Petitioner was re-sentenced on April 4, 2004, for the sole purpose of extending his time to appeal. (Id., Exhibit 14, pp. 11 - 19.) The Circuit Court granted Petitioner's Motion for Enlargement of Time to File an Appeal on August 5, 2004. (Id., Exhibit 5, pp. 20 - 22.) On October 14, 2004, the West Virginia Supreme Court granted Petitioner's Motion for Enlargement of Time to File an Appeal. (Id., Exhibit 6, pp. 23 - 27.)

On August 9, 2006, Petitioner, by counsel, J.L. Hickok, appealed his conviction and sentence to the West Virginia Supreme Court, raising the following assignments of error:

A.    The Court erred when it refused Petitioner's self-defense instruction.

B.    The Court erred when it denied the motion for a new trial since the State proved neither malice nor premeditation.

(Id., Exhibit 8, pp. 30 - 63.) On August 14, 2006, Petitioner filed a *pro se* Amended Petition for Appeal, raising the following assignments of error:

1.    The Petitioner, Stephen M. Gaultney, was convicted in violation of his right against self-incrimination when he was compelled by the Court's Orders to participate in three separate psychiatric and psychological evaluations while in State custody, and thereafter the State introduced in their case in chief statements made to the Court ordered psychiatrists by calling the same to

6

give a testimonial rendition of Defendant's revelations to him of incriminating facts. This violating the Fifth Amendment of the United States Constitution and Section Five of Article III of the West Virginia Constitution, as well as violating West Virginia State Code § 27-6A-1 & 2, West Virginia State Court Rules of Criminal Procedure, Rule 12.2(c).

2.     The Court erred when it gave an erroneous instruction of transferred intent, which allowed for a conviction of a person interacting with alleged hallucinations while in an alleged delusional state of mind. This in violation of West Virginia State Constitution, Article III, § 10, and W.Va. Code § 27-6A-1.

3.     State's use of defendant's statements to police, solicited while in State custody at a time when the Defendant was in a state of mind, where he could not knowingly and intelligently waive his right to counsel, and the State failed to meet their burden that the statements were admissible.

4.     The Court erred when it refused Petitioner's self defense instructions.

5.     The Court erred when it denied the motion for a new trial since the State provided neither malice nor premeditation.

(Document No. 26-2, Exhibit 9, pp. 16 - 63.) Petitioner requested that the Petition for Appeal filed by Mr. Hickok be withdrawn.  (Id., p. 2) On December 8, 2006, Petitioner filed in the West Virginia Supreme Court a *pro se* "Motion to Participate in the Oral Presentation Scheduled for January 9, 2007, in the above styled case, By Way of Video or Telephone Conference." (Document No. 26-2, Exhibit 10, p. 82 - 84.) By Order entered on December 29, 2006, the West Virginia Supreme Court denied Petitioner's Motion to Participate. (Id., p. 80 - 81.) The West Virginia Supreme Court refused Petitioner's Petition for Appeal by Order entered on January 10, 2007. State v. Gaultney, Case No. 062259 (W.Va. Jan. 10, 2007).

On March 14, 2006, Petitioner, proceeding *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Mercer County. Gaultney v. McBride, Civil Action No. 06-C-210 (Cir. Ct. Mercer Co. Nov. 6, 2008). (Document No. 26-2, Exhibit 11, pp. 90 - 109.) Petitioner raised

the following ground for *habeas* relief:

> The Petitioner was denied his constitutional, statutory, and procedural right to Petition for Appeal of his criminal conviction in Case No. 02-F-267, where his court appointed counsel has repeatedly failed to timely perfect and file an Appeal Petition to the West Virginia Supreme Court of Appeal and where the State has failed repeatedly to prepare timely transcription of requested proceedings for the purpose of aiding appointed counsel in preparing a timely Appeal Petition, this in violation of the Petitioner's right to a timely filed Appeal Petition, as provided by State Court Rules of Appellate Procedure, West Virginia Code § 58-5-4 in violation of procedural and substantive due process as provided by the 5th and 14th Amendments of the United States Constitution, and further in violation of the West Virginia State Constitution Article III, § 10, 17.

(Id., pp. 103 - 08.) Following the filing and refusal of Petitioner's direct appeal, the Circuit Court appointed counsel, Omar Alboulhosn, Esquire, to represent Petitioner. By letter dated April 23, 2007, Dana P. McDermott, Esquire, notified the Court he had been privately retained by Petitioner. On September 19, 2007, Petitioner, by counsel, Mr. McDermott, filed a "Revised Amended Omnibus Petition for a Writ of Habeas Corpus Ad Subjiciendum" raising the following grounds of error:

1. Trial Court lacked jurisdiction (Losh #1);
2. There was prejudicial pre-trial publicity (Losh #4);
3. Mental competency at time of crime (Losh #7);
4. Denial of counsel (Losh #11);
5. Unintelligent waiver of counsel (Losh #12);
6. Failure of counsel to take an appeal (Losh #13);
7. Consecutive sentence for same transaction (Losh #14);
8. Coerced confessions (Losh #15);
9. Suppression of helpful evidence by police/prosecutor (Losh #16);
10. State's knowing use of perjured testimony (Losh #17);
11. Falsification of a transcript by a prosecutor (Losh #18);
12. Ineffective assistance of counsel (Losh #21);
13. Double jeopardy (Losh #22);
14. Irregularities in arrest (Losh #23);
15. Illegal detention prior to arraignment (Losh #26);
16. Challenges to the composition of grand jury or to its procedures (Losh #28);
17. Defects in Indictment (Losh #30);
18. Improper venue (Losh #31);

8

19.    Refusal to call/subpoena witnesses (Losh #34);

20.    Refusal to turn over notes after witness has testified (Losh #38);

21.    Claim of incompetence at time of offense, as opposed to time of trial (Losh #39);

22.    Constitutional errors in evidentiary rulings (Losh #41);

23.    Instructions to the jury (Losh #42);

24.    Claims of prejudicial statements by trial judge (Losh #43);

25.    Claims of prejudicial statements by prosecutor (Losh #44);

26.    Sufficiency of evidence (Losh #45);

27.    Improper communications between prosecutor or witnesses and jury (Losh #48);

28.    Severer sentence than expected (Losh #50); and

29.    Excessive sentence (Losh #51).

(Document No. 26-3, Exhibit 12, pp. 3-25.) The requisite "Losh List" was filed, which contained the same grounds of error as asserted in Petitioner's Amended Petition. (Id., pp. 33 - 37.) An omnibus hearing was conducted on October 12, 2007. (Id., Exhibit 13, p. 40.) After addressing the merits of above claims, the Circuit Court denied his Petition for Writ of *Habeas Corpus* by Order entered November 6, 2008. (Id., Exhibit 13, pp. 40 - 93.)

On March 25, 2009, Petitioner, by counsel, filed in the West Virginia Supreme Court a "Motion to Grant Leave to File Out of Time" an "original jurisdiction habeas corpus petition . . . in lieu of an appeal from the denial and dismissal of an omnibus habeas corpus petition." (Id., pp. 100 - 101.) In the Petition for Writ of *Habeas Corpus*, Petitioner asserted the following grounds of error:

1.    Voluntariness of statement to arresting detective, drug intoxication and totality of circumstances (Losh #s 11, 12, 15, 23, and 26);

2.    The grand jury, perjury, prosecutors who testify and give legal conclusions, and denial of trial counsel (Losh #s 11 and 28);

3.    Mental incompetence at time of crime, failure to provide information to evaluating psychiatrist/psychologist(s) and denial of counsel (Losh # 7 and 11);

4.    Knock and announce/self-defense instruction (Losh #s 11 and 18);

5.      Transferred intent instruction, assurance by police there were no police; abuse of discretion, and the State failed to carry its burden on malice and premeditation (Losh # 420);

6.      A courtroom environment which may have intimated defense counsel and the Petitioner (Losh # 43);

7.      The stickers on the front door of the Petitioner's residence (Losh # 41 – Constitutional errors in evidentiary rulings; Losh #42 – Instructions to the jury);

8.      Trial judge's instruction on malice (Losh #42 – Instructions to the jury);

9.      Lack of nexus or concurrent leading to a structural error or a variance between the evidence and the law (Kotteakos v. United States) and an abuse of discretion;

10.     The shell casings, the ballistics report and denial of counsel (Losh # 11 – Denial of counsel; Losh #16 – Suppression of helpful evidence; and Losh #45 – Sufficiency of evidence);

11.     Diminished capacity defense, violation of Fourth, Fifth, and Sixth Amendment rights, coerced confessions, and prejudicial trial environment, and denial of counsel (Losh #s 6, 11, and 15);

12.     End of the diminished capacity defense; trial went to closing arguments and to the jury without a defense for the Petitioner;

13.     The defense counsel abandoned their adversarial role (denial of counsel) and this abandonment gave rise to an unjust result (Losh #s 11, 21, and 44);

14.     Double jeopardy (Losh #14 – Consecutive sentences for same transaction; Losh #22 – Double jeopardy; Losh#50 – Severer sentence than expected; Losh #51 – Excessive sentence);

15.     An appeals counsel who did not want to do an appeal (Losh #s 11, 13, and 21);

16.     Denial of counsel at habeas corpus status hearing (Losh #11 – Denial of counsel);

17.     Trial court lacked jurisdiction (Losh #1); and

18.     Reversible cumulative error.

10

(Document No. 26-4, Exhibit 16, pp. 65 - 83.) By Order entered on May 7, 2009, the West Virginia Supreme Court granted the motion and ordered the petition filed. (Id., Exhibit 17, p. 104.) On September 3, 2009, the West Virginia Supreme Court refused Petitioner's original jurisdiction *habeas* petition. Gaultney v. McBride, Case No. 090350; (Id., Exhibit 16, p. 65.)

Petitioner filed the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody on November 5, 2009. (Document No. 1.) On December 9, 2009, Petitioner filed a "Motion to Place § 2254 Habeas Corpus Petition in Abeyance." (Document No. 8.)

On December 21, 2009, Petitioner, by counsel, filed in the West Virginia Supreme Court a Motion to Grant Leave to File Out of Time a Petition for Appeal and his Petition for Appeal. (Document No. 26-3, Exhibit 14, pp. 97 - 99.) In the Petition for Appeal, Petitioner asserted the following errors:

1.  Voluntariness of statement to arresting detective, drug intoxication, and the totality of the circumstances;

2.  The grand jury, perjury, prosecutors who testify and give legal conclusions, and denial of (trial) counsel;

3.  Mental incompetence at time of crime, failure to provide information to evaluating psychiatrists/psychologist and denial of counsel;

4.  Knock and announce;

5.  Transferred intent instruction by the trial judge, assurance by police that there were not police, an abuse of discretion and the State failed to carry its burden on malice and premeditation;

6.  A courtroom environment which may have intimidated defense counsel and the Petitioner;

7.  The stickers on the front door of the Petitioner's residence;

11

8.      Trial judge's jury instruction on malice;

9.      Lack of nexus or concurrence leading to a structural error or a variance between the evidence and the law (Kotteakos v. United States) and an abuse of discretion;

10.     The shell casings, the ballistics report and denial of counsel;

11.     Diminished capacity defense, violation of Fourth, Fifth, and Sixth Amendment rights, coerced confessions, a prejudicial trial environment, and denial of counsel;

12.     End of the diminished capacity defense, trial went to closing arguments and the jury without a defense for the Petitioner;

13.     The defense counsel abandoned their adversarial role (denial of counsel) and this abandonment gave rise to an unjust result;

14.     Double jeopardy;

15.     An appeals counsel who did not want to do an appeal;

16.     Trial court lacked jurisdiction; and

17.     Reversible cumulative error.

(Document No. 26-4, Exhibit 15, pp. 3 - 35). By Order entered on February 11, 2010, the West Virginia Supreme Court granted Petitioner's "Motion to Grant Leave to File Out of Time" and ordered the Petition for Appeal filed. (Document No. 26-3, Exhibit 14, p. 96.) On March 11, 2010, the West Virginia Supreme Court refused Petitioner's Petition for Appeal. (Document No. 26-4, Exhibit 15, p. 2.)

On April 19, 2010, Petitioner filed a "Motion to Withdraw Motion to Place § 2254 Habeas Corpus Petition in Abeyance" stating that Petitioner had "exhausted available state remedies as required for a § 2254 federal habeas corpus petition." (Document No. 9.) Also on April 14, 2010, Petitioner filed an "Amended Case History." (Document No. 10.) By Orders entered on August 2, 2010, the undersigned granted Petitioner's "Motion to Withdraw Motion to Place § 2254 Habeas

Corpus Petition in Abeyance," denied as moot Petitioner's "Motion to Place § 2254 Habeas Corpus Petition in Abeyance," and directed Respondent to show cause, if any, why Petitioner's Petition should not be granted. (Document Nos. 13 and 14.) On October 27, 2010, in response to the Court's Order, Respondent filed his Answer, Motion to Dismiss, and Memorandum in Support thereof with exhibits. (Document Nos. 25 - 27.) Petitioner filed a Reply to Respondent's Motion to Dismiss and "Appendix of a More Definite Statement of the Issues Raised" on December 13, 2010. (Document Nos. 32 and 33.) On March 3, 2011, Petitioner filed a Motion for Scheduling Order arguing that his "Appendix of a More Definite Statement" rendered Respondent's Motion to Dismiss moot. (Document No. 37.) On March 17, 2011, Respondent filed his "Response in Opposition to Petitioner's Motion for Scheduling Order" stating that Petitioner's "'Appendix' is merely a compilation of State court pleadings (all of which had been previously filed as exhibits by Respondent) and Petitioner does not direct us to those portions of said pleadings that correspond to the grounds in his federal habeas petition." (Document No. 38.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

13

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id. In determining whether the State Court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State Court are entitled to a presumption of correctness. 28 U.S.C. § 2254(e).[1] On this framework,

---

[1] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

consideration should be given to Respondent's Motion to Dismiss and for Summary Judgment.

**Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

Respondent contends that his Motion to Dismiss should be granted based upon the following: (1) "The claims raised in Petitioner's direct appeal did not present the substance of a federal issue sufficient to render the claims exhausted" (Document No. 27, pp. 16 - 19.); (2) "Petitioner's appeal of his state habeas proceeding did not fairly present a federal claim" (Id., p. 19.); (3) "At best, the present Petition is mixed, containing both exhausted and unexhausted claims and thus requires summary dismissal by this Court" (Id., pp. 19 - 20.); and (4) "The present petition should be

dismissed as insufficiently pled, or amend" (<u>Id.</u>, pp. 20 - 22.). Respondent further states as follows:

> If this Court does not find that these deficiencies are grounds for summary dismissal, it should nonetheless find that the vague manner in which the claims are pled has greatly complicated the tasks of determining what federal rights Petitioner is invoking, what claims have been exhausted, and what claims are procedurally barred. Respondent requests this Court to direct Petitioner to make a more definite statement of his claims so as to argue the substance of his claims in relation to applicable federal constitutional principles and state the specific facts in the proceedings below that constituted a violation of that principle.

(<u>Id.</u>, p. 22.)

In response, Petitioner filed a Reply and "Appendix of a More Definite State of the Issues Raised in the Petition For a Writ of Habeas Corpus Under 28 U.S.C. Section 2254." (Document Nos. 32 and 33.) In his Reply, Petitioner first states "there has been multiple violations of his federal constitutional rights as set out in his U.S.C. § 2254 Petition, and as set out in the State court filings regarding the violations of his federal constitutional rights, which are the subject of the Federal Habeas Petition." (Document No. 32, p. 2.) Next, Petitioner argues "he has properly presented the substance of his claims to the State courts sufficiently to render them properly exhausted." (<u>Id.</u>, p. 3.) Third, Petitioner asserts he "has petitioned the Federal Court under U.S.C. § 2254, and has intended that his State Court filings be reviewed in their original form as they were presented to the States Courts." (<u>Id.</u>, p. 4.) Petitioner explains that "[a]lthough the State Court rulings and Opinions will have significance in the course of this case, the Petitioner does not rely on any of them to provide material that will alert this Court to the Federal claim." (<u>Id.</u>) Fourth, "Petitioner contends that it is appropriate in federal habeas proceedings to convert the Respondent's Motion to Dismiss into a Motion for Summary Judgment under Federal Rules of Civil Procedure Rule 56, and to defer any ruling on the Motion for Summary Judgment until after the case has been fully developed on both sides." (<u>Id.</u>, p. 5.) Finally, Petitioner states he does not oppose Respondent's request for a more

definite statement but "does not agree with Respondent's representations regarding the Federal

Habeas Petition being unstated or vague." (Id., p. 6.) Petitioner explains he has "attached Appendix

of A More Definite State of the Federal Claims/Issues Raised in the Petition Under 28 U.S.C. §

2254, which consists of designated State Court Filings in their Original Form. Each contention,

ground, or issue contained in these State Court Petitions are the Federal Claims advanced in this 28

U.S.C. § 2254 Habeas Corpus case." (Id., p. 7.)

In his Appendix of More Definite Statement, Petitioner asserts the following grounds:

**Section One Grounds**
03/14/06 Petition for a Writ of Habeas Corpus in State Court, pro se. The Petitioner
advances each contention/ground/issue, or otherwise raised in this Petition for a Writ
of Habeas Corpus as grounds for relief in this 28 U.S.C. § 2254 Petition for a Writ
of Habeas Corpus. Exhausted under collateral review in State Court. Advanced in
original form.

**Section Two Grounds**
08/09/06 Petition for Appeal filed by the Defendant/Petitioner, pro se. The petition
advances each contention/ground/issue or otherwise raised in this Petition for Appeal
as grounds for relief in this Federal Habeas case under 28 U.S.C. § 2254. Exhausted
under direct review in State Court. Advanced in original form.

**Section Three Grounds**
09/19/07 Petitioner's Revised Amended Omnibus Petition for Writ of Habeas
Corpus. The Petitioner hereby advances each contention/ground/issue or otherwise
raised in the Revised Amended Omnibus Petition as grounds for relief in this 28
U.S.C. § 2254, Petition for a Writ of Habeas Corpus. Exhausted under collateral
review in State Court. Advanced in original form.

**Section Four Grounds**
08/31/07 Petitioner's Brief in Support of Amended Omnibus Habeas Corpus Petition.
The Petitioner hereby advances each contention/ground/issue or otherwise raised in
this Brief in Support of Amended Omnibus Habeas Corpus Petition as grounds for
relief in this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. Exhausted under
collateral review in State Court. Advanced in original form.

**Section Five Grounds**
03/03/09 Petitioner's Original Jurisdiction Petition for a Writ of Habeas Corpus in
the Supreme Court of Appeals of West Virginia. The Petitioner hereby advances

17

each contention/ground/issue or otherwise raised in this Original Jurisdiction Habeas Petition as grounds for relief in this 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus. Exhausted under collateral review in State Court. Advanced in original form.

**Section Six Grounds**
03/03/09 Memorandum in Support of Original Jurisdiction Petition for a Writ of Habeas Corpus. The Petitioner hereby advances each contention/ground/issue or otherwise raised in Memorandum as grounds for relief in this 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus. Exhausted under collateral review in State Court. Advanced in original form.

**Section Seven Grounds**
12/21/09 Petition for Appeal from the Habeas Corpus case filed in Circuit Court. The Petitioner hereby advances each contention/ground/issue or otherwise raised in this Appeal Petition as grounds for relief in this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. Exhausted under collateral review in State Court. Advanced in original form.

(Document No. 33.) In support, Petitioner attaches copies of the following: (1) A copy of Petitioner's Petition for Writ of *Habeas Corpus* as filed *pro se* in the Circuit Court of Mercer County (Document No. 33-1.); (2) A copy of Petitioner's Petition for Appeal as filed *pro se* in the West Virginia Supreme Court (Document No. 33-2.); (3) A copy of Petitioner's "Revised Amended Omnibus Petition for a Writ of *Habeas Corpus Ad Subjiciendum*" as filed by counsel in the Circuit Court of Mercer County (Document No. 33-3.); (4) A copy of Petitioner's Brief in Support of Amended Omnibus *Habeas Corpus* Petition as filed by counsel in the Circuit Court of Mercer County (Document Nos. 33-4 and 33-5.); (5) A copy of Petitioner's Original Jurisdiction Petition for Writ of *Habeas Corpus* as filed by counsel in the West Virginia Supreme Court (Document No. 33-6.); (6) A copy of Petitioner's Memorandum in Support of the Original Jurisdiction Petition for Writ of *Habeas Corpus* as filed by counsel in the West Virginia Supreme Court (Document No. 33-7.); (7) A copy of Petitioner's Petition for Appeal from Denial of *Habeas* Petition as filed by counsel in the West Virginia Supreme Court (Document No. 33-8.); and (8) A copy of Petitioner's

18

"Appendix for Petition for an Appeal" as filed by counsel in the West Virginia Supreme Court (Document No. 33-9.).

*Habeas* petitions must meet heightened pleading requirements. <u>McFarland v. Scott</u>, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 66 (1994). The petition must "set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. "[N]otice pleading is not sufficient [in federal *habeas corpus*], for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); <u>also see</u> <u>Bernier v. Moore</u>, 441 F.2d 395, 396 (1st Cir. 1971)(stating that "[t]he fundamental purpose of *habeas corpus* would be undermined if the writ were prostituted by holding it out as available upon mere 'notice' without any showing of entitlement.") The petitioner must come forward with evidence that the claim has merit. <u>Nickerson v. Lee</u>, 971 F.2d 1125 (4th Cir. 1992), <u>cert. denied</u>, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), *abrogation on other grounds recognized*, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a petitioner to relief. <u>See</u> <u>Beasley v. Halland</u>, 649 F.Supp. 561, 566 (S.D.W.Va. 1986)(finding that "[m]ere conclusory charges of perjury and the knowing use of perjured testimony is insufficient to warrant a hearing or habeas relief"); <u>Jones v. Gomez</u>, 66 F.3d 199, 204 - 05 (9th Cir. 1995)(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do want warrant habeas relief").

Based upon a review of Petitioner's Petition, the undersigned finds that Respondent's Motion to Dismiss should be granted to the extent he requests Petitioner to file a more definite statement. As stated above, federal *habeas* relief is available only if the prisoner "is in custody in violation of

19

the Constitution or laws or treaties of the United States." In his Petition, Petitioner asserts eighteen grounds of error. The majority of Petitioner's grounds of error, however, fail to set forth a violation of a specific federal constitutional right or federal law.[2] Petitioner merely states conclusory allegations claiming entitlement to *habeas* relief. Petitioner must state facts that point to a "real possibility of constitutional error." The undersigned finds Petitioner's "Appendix of a More Definite Statement of Issues Raised in the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254" to be inadequate. Instead of providing a more definite statement, Petitioner's Appendix merely makes reference to documents filed in State Court. It is not the responsibility of the Court to review the State Court record in an effort to determine the substance of Petitioner's federal claims. See de la O v. Housing Authority of City of El Paso, 417 F.3d 495, 501 (5th Cir. 2005)("Judges are not like pigs, hunting for truffles buried in briefs.") The undersigned concludes that Petitioner should file a more definite statement as to each ground of error setting forth the following: (1) a statement explaining how the ground of error was presented at each State level of review thus demonstrating that State remedies were fully pursued and exhausted; (2) the applicable federal law or constitutional violation; (2) summary of facts supporting the ground of error; (3) citations to cases supporting each ground of error; and (4) statement relating how the State Court's *habeas* decision resulted in a decision that (a) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Based upon the undersigned's determination that a more definite statement is necessary,

---

[2] The Court notes that Petitioner alleges specific constitutional violations in Grounds 11, 17, and 18. Petitioner, however, does not specify whether he is asserting a federal or state constitutional claim.

the undersigned finds it unnecessary to address the merits of Respondent's argument that Petitioner failed to properly exhaust his claims. Accordingly, the Court recommends that Respondent's Motion to Dismiss be granted to the extent he "requests this Court to direct Petitioner to make a more definite statement" and denied to the extent he seeks dismissal of Petitioner's Petition.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion to Dismiss (Document No. 26) to the extent he requests the "Court to direct Petitioner to make a more definite statement of his claims" and **DENY** Respondent's Motion to Dismiss to the extent he requests dismissal of Petitioner's Petition, and refer this matter back to the undersigned for the scheduling of further proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright

v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and to counsel of record.

Date: July 19, 2011.

R. Clarke VanDervort
United States Magistrate Judge